IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **YUSEF WASHINGTON**, <br><br> Petitioner, <br><br> *v.* <br><br> **KATHY BRITTAIN, et al.,** <br><br> Respondents. | **CIVIL ACTION** <br><br><br> **NO. 20-4303-KSM** |

<u>**MEMORANDUM**</u>

**MARSTON, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　**November 21, 2022**

　　　　Petitioner Yusef Washington was convicted of two counts of first-degree murder, two counts of aggravated assault, one count of conspiracy, and one count of possession of an instrument of crime following a jury trial in May 2010.  He now requests habeas corpus relief pursuant to 28 U.S.C. § 2254(d).  (*See* Doc. No. 1.)  Among other things, Washington argues that the state court overseeing his criminal trial committed constitutional error when it closed the courtroom to certain members of the public without considering less drastic alternatives, without placing the reasons for closure on the record with specificity, and without ensuring that the order was properly carried out by court staff.  (*See id.* at 11.)  On December 10, 2020, the Court referred the Petition to the Honorable Timothy R. Rice, United States Magistrate Judge, for a Report and Recommendation ("R&R").  (Doc. No. 4.)  Judge Rice held an evidentiary hearing on this issue on December 1 and December 17, 2021.  (Doc. Nos. 37, 41.)  And on March 3, 2022, Judge Rice entered an R&R recommending that the Court dismiss Washington's Petition with prejudice.  (Doc. No. 44.)  Washington objects to the R&R in part.  (Doc. No. 45.)  For the reasons discussed below, his objections are overruled.  The Court finds no error in Judge Rice's findings and conclusions and adopts the R&R in its entirety.

**I. BACKGROUND**

  *A. Washington's Criminal Trial*

The R&R succinctly recounts Washington's underlying criminal conduct and his trial before the Court of Common Pleas of Philadelphia County:

> On the morning of June 7, 2006, a dispute occurred between members of two groups of young men near a North Philadelphia street corner (the "Corner"). One group included Washington, Raheem Jenkins, and Braheem Burke. The other group included Eric Carter, Charles Carter, Keith McClain, and Niall Saracini.
>
> As the four unarmed men in Eric [Carter]'s group approached Washington's group, Jenkins walked towards them while Washington and Burke remained near the Corner. Eric [Carter] punched Jenkins, causing him to fall, and gunshots rang out. Eric [Carter] survived by hiding in a nearby car. McClain was shot in his left leg as he ran away from the scene. Charles [Carter] was fatally shot in the head and Saracini was fatally shot in the neck, shoulder, back, and arm.
>
> Evidence recovered by the police showed that at least three separate guns had been used. Police obtained a warrant for Washington's arrest two days after the murders but he remained a fugitive for nearly two years until his arrest in North Carolina in April 2008.
>
> Because none of the witnesses, including Eric Carter and McClain, testified during Washington's trial that they saw Washington with a gun, the prosecution introduced their prior police statements and testimony in which they stated they observed Washington with a gun and/or shooting at the time of the crime[.]
>
> During a recess on the sixth day of trial, a fight broke out in the hallway. The trial court recounted the event: "When [the spectators] exited the hallway evidently a fight broke out in which sheriffs and police were called. Fists were thrown, people were apprehended and it was basically an uncontrollable situation in which everyone was put in danger." Washington's grandmother also had to be hospitalized following the incident. The trial court explained to Washington: "[B]ecause of the unbelievable experience outside, [I understand that your grandmother] started to have chest pains. We called 9-1-1 and my understanding is that she's fine. . . . As a precaution they took her to the hospital to make sure that everything is okay."

> At the joint request of the prosecutor, Gail Fairman, and defense counsel, Michael Giampietro, the trial court ordered that "everyone who was involved in this riot in the hallway has been barred from the courtroom because they have demonstrated that they cannot follow the rules of this Court and do not seem to understand that this is a courtroom and that the freedom of the defendant is being tried before this jury, and for the safety of all parties involved." The court did not identify the specific individuals involved in the "riot."
>
> Testimony concluded when court resumed that afternoon. The [next] day, the court delivered its final instructions and the attorneys gave their closing arguments.

(*See* Doc. No. 44 at 1–3 (alterations in original) (internal citations omitted)); *see generally Commonwealth v. Washington* [*Trial Court Proceeding*], CP-51-cr-8855-2008 (Pa. Ct. Comm. Pl.).

Two days later, a jury found Washington guilty of two counts of first-degree murder, two counts of aggravated assault, one count of conspiracy, and one count of possession of an instrument of crime. *Trial Court Proceeding*, Trial (Jury) Vol. 1 May 13, 2010 at 1:13, 4:19–5:18. The trial court sentenced Washington to life in prison without the possibility of parole. *Trial Court Proceeding*, Sent'g Vol. 1 Oct. 22, 2010 at 16:1–22.

### B. Direct Appeal

Washington appealed his conviction and sentence to the Pennsylvania Superior Court on three grounds, two of which are relevant here. First, Washington argued that he was "denied a fair trial . . . because the trial court ordered that the courtroom be cleared thereby violating [Washington's] state and federal constitutional rights to a trial open to the public." Non-Precedential Decision at 3, *Commonwealth v. Washington* [*Direct Appeal*], 62 A.3d 462 (Table) (Pa. Super. Ct. 2012) (No. 768 EDA 2011) (quoting Appellant's Brief). The Pennsylvania Superior Court disagreed, finding Washington waived his right to a public trial by not objecting at trial to the court's closure order. *Id.* at 6 ("Since no objection was raised to the procedure and

since [Washington] not only acquiesced in the [closure], but actively sought the ruling handed down by the trial court, this averment is waived.").

Second, Washington argued that he was "deprived of a fair trial because the trial court denied his request that that jury be charged on self-defense, unreasonable belief voluntary manslaughter" and failed to instruct on "heat of passion voluntary manslaughter." *Id.* at 3. Washington reasoned that because the opposing group initiated the physical altercation by punching Jenkins, the evidence at trial "supported both that [Washington] possessed an unreasonable belief that he needed to act with deadly force in self-defense and that he acted under provocation." *Id.* at 7. The Superior Court again found that Washington waived these issues, emphasizing that Washington did not object when the trial court refused to give the imperfect self-defense charge and "never claimed to have acted in the heat of passion." *Id.* at 8.

Washington appealed the Superior Court's ruling, but the Pennsylvania Supreme Court declined discretionary review. *See Commonwealth v. Washington*, 69 A.3d 602 (Table) (Pa. 2013) (No. 542 EAL (2012)).

### C.     *Pennsylvania Post Conviction Relief Act ("PCRA") Petition*

Having exhausted his direct appeals, Washington filed a *pro se* petition for relief under Pennsylvania's PCRA. *See* PCRA Petition, *Commonwealth v. Washington [PCRA Challenge]*, CP-51-CR-8855-2008, 2019 Phila. Ct. Comm. Pl. LEXIS 130 (Pa. Ct. Comm. Pl. Mar. 25, 2019); *see also PCRA Challenge*, 2019 Phila. Ct. Comm. Pl. LEXIS 130, at *1. The court appointed counsel for Washington, and counsel filed an amended PCRA petition and supplement. *See* Amended PCRA Petition, *PCRA Challenge*, 2019 Phila. Ct. Comm. Pl. LEXIS 130; Supplement, *PCRA Challenge*, 2019 Phila. Ct. Comm. Pl. LEXIS; *see also PCRA Challenge*, 2019 Phila. Ct. Comm. Pl. LEXIS 130, at *2. Although the PCRA petition argued ineffective assistance of trial counsel as to other issues, it did not mention the court closure order,

or the trial court's failure to instruct the jury on manslaughter. *See PCRA Challenge*, 2019 Phila. Ct. Comm. Pl. LEXIS 130, at *8–9. The PCRA court ultimately denied Washington's request for relief, finding that each of Washington's claims lacked merit. *See generally PCRA Challenge*, 2019 Phila. Ct. Comm. Pl. LEXIS 130. Washington appealed to the Pennsylvania Superior Court, which affirmed the lower court's ruling. *See Commonwealth v. Washington*, 236 A.3d 1138 (Table), 2020 WL 2096027, at *1 (Pa. Super. Ct. 2020).

The instant § 2254 Petition followed.

### D.     § 2254 Petition

On September 2, 2020, Washington filed a timely, counseled habeas petition in this Court. (*See* Doc. No. 1.) Although his initial Petition asserted seven grounds for relief (*see id.* at 11–23), the memorandum filed in support of that Petition asserted only two errors: (1) the trial court's partial closure order was administered indiscriminately against all members of Washington's family, not just those who fought outside the courtroom, violating his right to a public trial (the "Court Closure Claim"), or in the alternative, trial counsel was ineffective for not objecting to the closure order (collectively, "Claim 1"); and (2) the denial of a voluntary manslaughter instruction violated Washington's right to a fair trial, or in the alternative, trial counsel was ineffective for not objecting to the court's jury instructions ("Claim 2"), (*see* Doc. No. 9 at 2, 20, 51.) After an evidentiary hearing in early December 2021,[1] Judge Rice entered an

---

[1] The Philadelphia District Attorney initially consented to Washington's request for an evidentiary hearing. (*See* Doc. No. 44 at 4 n.2.) The District Attorney later withdrew from the case because Washington's former trial counsel now works in the District Attorney's office. (*Id.*) The Pennsylvania Attorney General then entered his appearance and moved to cancel or postpone the hearing, arguing that the evidentiary hearing was impermissible under 28 U.S.C. § 2254(e)(2) because Washington's courtroom closure claim was based on new factual issues that could, and should, have been developed in state court. (Doc. No. 26 at 5; *see also id.* at 3–4 (arguing that it could not be bound by the District Attorney's agreement to the evidentiary hearing because the District Attorney's representation was tainted by a conflict of interest).) *See* 28 U.S.C. § 2254(e)(2) ("If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on

R&R, recommending dismissal of Washington's claims with prejudice as procedurally defaulted and meritless. (Doc. No. 44 at 1.) Washington objects only to the R&R's conclusion that the Court Closure Claim is procedurally defaulted. (Doc. No. 45.) The government filed an opposition brief (Doc. No. 49), and Washington filed a reply brief (Doc. No. 50).

## II.   STANDARD OF REVIEW

"In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation." *Piasecki v. Ct. of Common Pleas*, No. 14-cv-7004, 2021 WL 1105338, at *3 (E.D. Pa. Mar. 23, 2021). Under that Rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections." *Id.* (quoting *Savior v. Superintendent of Huntingdon SCI*, No. 11-cv-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012)).

When a party objects to a magistrate judge's findings, the district court must make "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 673 (1980). "Ultimate adjudicatory power" resides with the district court "after receiving assistance from and the recommendation of the magistrate." *Raddatz*, 447 U.S. at 692. And after reviewing the magistrate judge's conclusions, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations" and "receive further evidence, or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1); *Raddatz*, 447 U.S. at 673–74.

---

the claim . . . ."). Judge Rice refused to cancel the hearing but agreed to postpone it to accommodate counsel and witnesses. (Doc. No. 44 at 4 n.2.)

When neither party objects to a magistrate judge's findings, the district court must nonetheless review the magistrate judge's findings before adopting them as its own. *EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) ("Even absent objections to the report and recommendation, a district court should afford some level of review to dispositive legal issues raised by the report." (quotation marks omitted)); *see also Mathews v. Weber*, 423 U.S. 261, 271 (1976) ("[T]he authority and responsibility to make an informed final determination remains with the [district court] judge.").

### III. DISCUSSION

Washington argues that Judge Rice erred when he found Washington's Court Closure Claim procedurally defaulted. (*See* Doc. No. 45 at 1 ("The magistrate judge erred in failing to address the merits of the underlying constitutional claim that the trial court's closure order was overbroad, failed to consider less drastic alternatives, and was unsupported by adequate justification articulated in the record."); *see also* Doc. No. 50.) Washington does not, however, object to Judge Rice's recommendations as to counsel's effectiveness in connection with that claim. (*See* Doc. No. 45 at 1 ("Although we do not agree with the magistrate judge's findings of fact and analysis respecting the claim that trial counsel was ineffective in failing to object to the courtroom closure order, we do not object to it here.").) Nor does Washington object to Judge Rice's recommendations as to Claim 2. (*See* Doc. No. 45 at 8 ("We also do not object to the Report's analysis of the claim respecting the failure to request an instruction on voluntary manslaughter.").) Because Washington does not object to Judge Rice's findings on ineffective assistance of counsel in Claim 1 or any of his conclusions as to Claim 2, the Court adopts those findings as its own, and Washington's Petition is denied to the extent it rests on those grounds.[2]

---

[2] The Court has considered Judge Rice's factual and legal conclusions on these issues and finds them to be well-reasoned and supported by the record. *See Henderson v. Carlson*, 812 F.2d 874, 878 (3d

7

That leaves Judge Rice's conclusion that Washington's Court Closure Claim is procedurally defaulted. On that issue, Judge Rice began by comparing the claim that Washington makes before this Court to the claim that Washington raised on direct appeal of his conviction and sentence. (Doc. No. 44 at 5 ("Washington raised a similar claim on appeal, arguing that the trial court violated his right to a public trial by barring his family members from the courtroom without considering other alternatives." (internal citation omitted)).) A review of those two claims shows that they are nearly identical. In both instances, Washington argued that members of his family, who were not involved in the fight outside of the courtroom, were improperly excluded from the courtroom after the fight. (Doc. No. 9 at 22 ("[A]ll those affiliated with Washington, including those who had never left the courtroom and were nowhere near the fight, had been barred from attending court.")); Pet'rs Br. at 11, *Direct Appeal*, 62 A.3d 462 (Table) (describing the order as "barring members of [Washington]'s family from the court room" and "barring everyone"). In both proceedings, he also argued that the trial court failed to consider reasonable alternatives, (Doc No. 9 at 27 ("[T]he trial court failed to consider reasonable alternatives less drastic than a complete closure and it certainly failed to articulate specific reasons to adequately justify the complete closure.")); Pet'rs Br. at 12, *Direct Appeal*, 62 A.3d 462 (Table) ("The fact that the trial court apparently failed to consider alternatives itself constitutes error of constitutional dimension."), and that the trial judge failed to place his reasons for closure on the record, (Doc No. 9 at 35 ("[T]he trial court here also utterly failed to state any reasons on the record why the innocent members of the public also had to be barred from the

---

Cir. 1987) ("[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court."); *see also, e.g.*, *Alexander v. Monroe County*, No. 13-cv-1758, 2016 WL 7104313, at *2 (M.D. Pa. Dec. 6, 2016) (adopting portion of R&R that was not objected to before reviewing objected portions *de novo*).

8

courtroom.")); Pet'rs Br. at 11, *Direct Appeal*, 62 A.3d 462 (Table) ("The record is totally lacking in justification for the order barring members of Appellant's family from the courtroom.").[3]

Judge Rice then turned to the Superior Court's ruling on the court closure. (Doc. No. 44 at 6.) On direct appeal, the Superior Court found that Washington had waived his right to challenge the trial court's closure order because he failed to contemporaneously object to the "procedure" used to close the courtroom. Non-Precedential Decision at 6, *Direct Appeal*, 62 A.3d 462 (Table). That ruling was based on Pennsylvania Rule of Appellate Procedure 302(a),

---

[3] That said, Washington's argument appears to have changed slightly since his direct appeal. On direct appeal, Washington took issue with the trial judge's order as given, arguing that the judge wrongly "barred spectators" from the courtroom. Pet'rs Br. at 9, *Direct Appeal*, 62 A.3d 462 (Table). By contrast, here, Washington challenges the order *as administered by the court staff*, arguing that staff members wrongly applied the judge's order to exclude spectators who were not involved in the fight. (*See, e.g.*, Doc. No. 9 at 26 ("[T]he trial court's closure order, *as administered* . . . ." (emphasis added)); *id.* ("[T]he *court staff* transformed the trial court's limited closure order barring only the participants in the fight into a complete closure order barring every one of Washington's supporters, including those not involved in the fight . . . ." (emphasis added)); *id.* at 27 ("[T]his is first a stand-alone claim alleging that the excessive, overly broad manner in which the partial closure order *was carried out* violated Washington's Sixth Amendment right to a public trial." (emphasis added)); *id.* at 31 ("The manner in which the court's order *was administered* was error." (emphasis added)); *id.* at 32 ("Because *court staff* erroneously removed all of Washington's friends and family on May 11, 2010 . . . ." (emphasis added)).)

The Commonwealth highlighted this distinction in its arguments before Judge Rice, asserting that Washington should (and could) file a second PCRA petition "based on the new facts" contained in the declarations supporting the instant petition. (Doc. No. 44 at 7 n.5.) Judge Rice disagreed, finding that Washington was barred from filing a new PCRA petition because he could have discovered the purportedly "new" facts with the exercise of reasonable diligence. (*Id.*) We agree with this finding and with Judge Rice's ultimate conclusion that any new arguments about court closure are procedurally defaulted because Washington failed to raise them during his direct appeal or in his PCRA petition and could not do so now. *See* 42 Pa. Stat. & Cons. Stat. § 9545(b) (barring state collateral review under PCRA when brought more than a year after final judgment); *Marcy v. Warden, SCI Graterford*, No. 3:17-cv-00411, 2020 WL 1904466, at *5 (M.D. Pa. Apr. 17, 2020) ("The PCRA's time bar is an 'adequate' state law ground to support the Superior Court's judgment in this case, because the timing requirements for filing a PCRA petition are firmly established and regularly followed as they are jurisdictional in nature." (quotation marks omitted)). Thus, to the extent Washington raises a new claim that targets the court staff's implementation of the closure order, that challenge is procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (explaining that a claim is procedurally defaulted "if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").

which dictates that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa. R. App. P. 302(a). Judge Rice found Rule 302(a) to be an independent and adequate state rule supporting the Superior Court's holding, and as such, held that Washington's court closure claim is procedurally defaulted. (Doc. No. 44 at 6.)

Washington objects to this holding, arguing that "the independent-and-adequate-state-ground doctrine is triggered only if there is a default," and that "[h]ere, there was no default." (Doc. No. 45 at 4.) Washington also argues that because the claim was dismissed on procedural grounds, it was not adjudicated on the merits in the Pennsylvania courts, and thus, Judge Rice should have reviewed the Court Closure Claim *de novo*.[4] (*Id.* at 5.) In the alternative, Washington argues that Rule 302(a), which requires an objection to preserve an issue for appeal, is contrary to Supreme Court precedent on the right to a public trial and therefore, inadequate to support the Superior Court's ruling. (*See id.* at 4.)

The Court addresses each of Washington's arguments in turn.

### A.   *Procedural Default*

First, Washington argues that Judge Rice erred when he considered "the independent-and-adequate-state-ground doctrine" because that doctrine "is triggered only if there is a default." (*Id.* at 4.) This is incorrect. The Supreme Court has long recognized that a federal court reviewing a state court judgment is precluded from considering an issue of federal law when the state court's ruling on that issue rests on an independent and adequate state law ground. *See Coleman*, 501 U.S. at 729 ("This Court will not review a question of federal law decided by

---

[4] Washington argues that in reviewing the claim *de novo*, Judge Rice should have considered the trial court's failure (1) to limit the partial closure to those involved in the altercation outside the courtroom, (2) consider less drastic alternatives, and (3) place the Court's rationale for choosing a partial closure over other reasonable alternatives on the record. (*Id.* at 1–2.)

a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."); *Harris v. Reed*, 489 U.S. 255, 260 (1989) ("This Court long has held that it will not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision."); *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983) ("Respect for the independence of state courts, as well as avoidance of rendering advisory opinions, have been the cornerstones of this Court's refusal to decide cases where there is an adequate and independent state ground . . . . If the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent grounds, we, of course, will not undertake to review the decision."); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977) ("As to the role of adequate and independent state grounds, it is a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts  The application of this principle in the context of a federal habeas proceeding has therefore excluded from consideration any questions of state substantive law, and thus effectively barred federal habeas review where questions of that sort are either the only ones raised by a petitioner or are themselves dispositive of his case.").

This doctrine applies not only to state court judgments based on a state's substantive laws, but also to judgments that rest on an application of state procedural rules. *See Coleman*, 501 U.S. at 729 (explaining that "the doctrine applies to bar federal habeas [review] when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement"); *Harris*, 489 U.S. at 260–61 ("Although this doctrine originated in the context of state-court judgments for which the alternative state and federal grounds were

both 'substantive' in nature, the doctrine has been applied routinely to state decisions forfeiting federal claims for violation of state procedural rules."). In other words, if an independent and adequate state procedural rule prevented the state court from reaching the merits of the federal claim, the claim is "procedurally defaulted," and the federal court is barred from considering the merits of the underlying federal issue in a collateral attack. *See Wainwright*, 433 U.S. at 86–87 ("We therefore conclude that Florida procedure did, consistently with the United States Constitution, require that respondents' confession be challenged at trial or not at all, and thus his failure to timely object to its admission amounted to an independent and adequate state procedural ground which would have prevented direct review here."); *King v. Superintendent Coal Twp. SCI*, No. 20-1197, 2021 WL 3781725, at *3 (3d Cir. Aug. 26, 2021) ("[A] federal claim that a state court rejected based on an adequate and independent state procedural rule" is known "as a procedural default," and "the procedurally defaulted claim is ordinarily barred as a matter of comity and federalism." (quotation marks and citations omitted)); *cf. Coleman*, 501 U.S. at 732 ("In the absence of the [procedural] independent and adequate state ground doctrine . . . *habeas* petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court.").

Accordingly, Judge Rice correctly considered whether the Superior Court's ruling rested on an independent and adequate state procedural rule—Rule 302(a)—that forecloses federal review of the merits of Washington's court closure claim.

    **B.**    *Adequacy of Rule 302(a)*

Next, Washington argues that Rule 302(a) is not an independent and adequate state rule.

"The procedural default doctrine has three relevant components." *King*, 2021 WL 3781725, at *3. The doctrine applies to "(i) a state procedural ruling that is (ii) independent of a federal law ruling and (iii) adequate to support the state-court decision." *Id*. A petitioner may

12

challenge the adequacy of a state procedural rule on the grounds that it is unconstitutional as applied to him. *See Klobuchir v. Commonwealth*, 639 F.2d 966, 974 n.13 (3d Cir. 1981) ("To constitute an adequate and independent state ground, the [state court's] interpretation of the rules of practice . . . had to be constitutionally sound and have a fair and substantial basis in state law."); *Phillips v. Ferguson*, 182 F.3d 769, 772 (10th Cir. 1999) ("[I]f the state asserts its post-conviction procedural rules as an independent and adequate state procedural bar, the federal courts are required to consider the adequacy of the state's post-conviction procedural remedy. And, if it is determined that the state post-conviction procedure is unconstitutional, then such procedures would not, in most instances, be regarded as an adequate state procedural bar to habeas consideration of the underlying conviction."); *see also Albrecht v. Horn*, 485 F.3d 103, 115–16 (3d Cir. 2007) (holding that the procedural default doctrine did not apply because the state procedural rule was not "independent and adequate" as applied to the petitioner); *King*, 2021 WL 3781725, at *3 (considering the petitioner's argument that although "Rule 302(a) is—in general—an adequate procedural rule, as it is firmly established and regularly followed in Pennsylvania," its application in his case was nevertheless "exorbitant and therefore inadequate").

That is the contention that Washington makes here. He argues that Rule 302(a) was unconstitutionally applied in his direct appeal because no objection is required to maintain a claim for violation of the right to a public trial. (Doc. No. 45 at 4.) In other words, he argues that he could not, as a matter of federal constitutional law, have waived his right to a public trial by failing to object during trial. For this argument, Washington relies on three Supreme Court cases that hold a trial court must consider less drastic alternatives before closing certain proceedings to the public. *See generally Waller v. Georgia*, 467 U.S. 39 (1984); *Press-*

13

*Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984); *Presley v. Georgia*, 558 U.S. 209 (2010). (*See* Doc. No. 45 at 2–5.) Washington reasons that:

> If the Supreme Court requires trial courts to consider less drastic alternatives to closure even when the parties agree that closure is appropriate, *a fortiori* defense counsel's failure to object does not foreclose appellate review of the claim that the trial court erred in failing to consider less drastic alternatives. The state court's finding that this claim was waived is not, as the magistrate judge found, an independent and adequate state procedural rule. It is, instead, application of a state rule that directly contradicts Supreme Court precedent.

(*Id.* at 4.) Washington's reading of these three cases sweeps too broadly.

In the first case, *Press-Enterprise*, a third party moved for jury *voir dire* to be open to the public and the press. 464 U.S. at 503. The government and the defendant opposed the motion. *Id.* The trial court agreed with the parties and allowed the public to attend only the "general *voir dire*" and not the "individual *voir dire*" of each prospective juror. *Id.* On appeal, the United States Supreme Court discussed the history of the right to a public trial and emphasized its importance: "Openness . . . enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Id.* at 508. The Court then found that the trial court's order, which closed six weeks of *voir dire* proceedings, violated the public's right to access trials because the judge failed to consider alternatives to complete closure or to articulate its reasons for closure with specificity. *Id.* at 513; *see also id.* at 516 (Stevens, J., concurring) ("The constitutional protection of the right of access that the Court upholds today is found in the First Amendment . . . .").

*Waller* built on the rule articulated in *Press Enterprise*, holding that the trial court violated the defendants' Sixth Amendment rights to a public trial when it closed a suppression hearing over the defendants' objections and without considering alternatives. 467 U.S. at 47 ("In

14

sum, we hold that under the Sixth Amendment any closure for a suppression hearing over the objections of the accused must meet the tests set out in *Press-Enterprise* and its predecessors.").

Last, *Presley*, like *Press-Enterprise*, involved a trial court order closing jury *voir dire*. 558 U.S. at 209–10. Defense counsel objected to the order, but the court overruled the objection, finding that there was not room in the courtroom for the 42 prospective jurors and members of the public (including the defendant's uncle). *Id.* at 210. The state appellate courts affirmed the ruling, rejecting the defendant's argument that the trial court should have *sua sponte* considered alternatives, such as altering the prospective jurors' seating arrangements to allow room for members of the public. *Id.* at 211. The Supreme Court disagreed, explaining that under its precedent "trial courts are required to consider alternatives to closure even when they are not offered by the parties" because "[t]he public has a right to be present whether or not any party has asserted the right." *Id.* at 214.

As this brief discussion shows, *Press-Enterprise*, *Waller*, and *Presley* did *not* involve habeas petitions, discuss exhaustion, or explain the limits of the procedural default doctrine. Accordingly, they offer limited assistance in deciding the procedural default question before the Court. The Court is particularly unwilling to read these three cases as broadly disallowing the waiver doctrine's application to public trial violations, given Supreme Court and Third Circuit precedent holding that a defendant can waive his constitutional right to a public trial. *See United States v. Sorrentino*, 175 F.2d 721, 723 (3d Cir. 1949) ("We think that the same considerations apply to the right to a public trial and that a defendant may waive that privilege also."); *United States v. Kobli*, 172 F.2d 919, 921 n.2 (3d Cir. 1949) ("It would appear that these three defendants by thus consenting to the trial judge's order waived their right to the public trial which the Sixth Amendment guarantees, since it is well settled that the right is one which can be

waived."); *see also Singer v. United States*, 380 U.S. 24, 35 (1965) (citing *Kobli* for the proposition that "a defendant can, under some circumstances, waive his constitutional right to a public trial"); *Levine v. United States*, 362 U.S. 610, 619–20 (1960) (declining to consider a challenge to the trial court's closure order raised by a party "who, at the appropriate time and acting under advice of counsel, saw no disregard of a right, but raises an abstract claim only as an afterthought on appeal"); *cf. Waller*, 467 U.S. at 42 n.2 (noting that one of the defendants had not objected to closure of the suppression hearing and leaving to the state court to "determine on remand whether [that defendant was] procedurally barred from seeking relief as a matter of state law").

The Third Circuit recently confirmed the applicability of the waiver doctrine in the context of a public trial violation. *See United States v. Williams*, 974 F.3d 320, at 337–40 (3d Cir. 2020). *Williams* involved a federal criminal trial of twelve defendants for drug charges. Before jury *voir dire*, the district court, citing "courtroom capacity limitations," *sua sponte* issued an order barring the public from jury selection absent prior express authorization of the court. *Id.* at 337. After trial, ten of the defendants appealed their convictions, arguing that the closure order violated their Sixth Amendment right to a public trial. *Id.* at 340. The Third Circuit found that the district court's "closure of the courtroom undoubtedly violated the Defendants' Sixth Amendment right to a public trial," and had the issue been preserved below, the defendants would have been "entitled to 'automatic reversal.'" *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 7 (1999)); *see also Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017) ("[I]n the case of a structural error," such as violation of the defendant's right to a public trial, "where there is an objection at trial and the issue is raised on direct appeal, the defendant

16

generally is entitled to 'automatic reversal' regardless of the error's actual effect on the outcome." (quotation marks omitted)).

Nevertheless, the appellate court refused to correct the error, noting that no party objected to closure at the time the order was entered—a necessary step to preserve the issue on appeal. *Williams*, 974 F.3d at 337 (explaining that a party preserves an issue on appeal "only if he timely object[s] to the error, thus giving the district court the opportunity to rectify or at least respond to, the purported problem"); *see also* Fed. R. Crim. P. 51(b) ("A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for the objection."). Thus, the appellate court would exercise its discretion to vacate the convictions and order a new trial only if the lower court's closure order amounted to "plain error" and the defendants could show that "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Williams*, 974 F.3d at 340 ("A federal appellate court's authority to remedy an unpreserved error 'is strictly circumscribed.'" (quoting *Puckett v. United States*, 556 U.S. 129, 134 (2009))). Because the court could not "say that the District Court's closure of jury selection to the public 'seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings,'" the court declined to set aside the defendants' convictions. *Id.* at 348 (quoting *Olano*, 507 U.S. at 736)).

Given the holdings in these cases, the Court rejects Washington's argument that Rule 302(a) is at odds with Supreme Court precedent and unconstitutional when applied in the context of a public trial violation. To the contrary, Rule 302(a) constitutes an independent and adequate state ground to support the Superior Court's ruling on direct appeal. *See, e.g.*, *Norton v. Coleman*, Civil Action No. 09-1751, 2009 WL 5652570, at *4 (E.D. Pa. Nov. 25, 2009)

("[J]udges in this district have found that Pa. R.A.P. 302 constitutes an independent and adequate state ground on which a state court bases its decision.") (collecting cases). Accordingly, Judge Rice correctly found Washington's court closure claim procedurally defaulted.

## IV.     CONCLUSION

Washington's objections are overruled. Judge Rice's R&R is adopted in its entirety, and Washington's Petition is denied.

An appropriate order follows.